**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MIAMI DIVISION

CASE NO. 1:19-CV-23020

| | |
|---|---|
| IMANI NIA KEY; FERNANDO DE CESPEDES; and HOLLY DILLON, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiffs, | (JURY TRIAL DEMANDED) |
| v. | |
| BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Imani Nia Key, Fernando De Cespedes, and Holly Dillon, individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters:

**NATURE OF ACTION**

1.     Plaintiffs bring this Class Action Complaint against Bank of America, N.A. and Bank of America Corporation (collectively, "Bank of America" or "Defendant") for legal and equitable remedies resulting from Bank of America's practices of systematically assessing improper overdraft fees, overdraft protection transfer fees, and withdrawal limit fees to the personal checking and savings accounts of its customers.

2.     At all times relevant to this action, Bank of America's relationship with Plaintiffs and its other personal deposit account holders has been governed by the "Deposit Agreement and Disclosures" and the incorporated "Personal Schedule of Fees" – a standardized set of contractual documents, the terms of which are drafted by Bank of America, amended by Bank of America from time to time at its convenience and complete and sole discretion, and uniformly imposed by

Bank of America on all of its customers. *See* Compl., <u>Exhibit A</u> (Deposit Agreement and Disclosures dated November 10, 2017 (hereinafter, the "Deposit Agreement")), at 2 ("You understand that these terms, as we may change or supplement them periodically, are a binding contract between you and us for your deposit account and your deposit relationship."); Compl., <u>Exhibit B</u> (Personal Schedule of Fees dated August 12, 2016 (hereinafter, the "Schedule of Fees")), at 1 ("Your account and deposit relationship with us are governed by this schedule of fees and the Deposit Agreement and Disclosures. . . . These agreements are part of the binding contract between you and us for your account and deposit relationship.").

3.      Over the past five years, Bank of America has routinely breached the Deposit Agreement and Schedule of Fees, as well as the covenant of good faith and fair dealing and various other legal obligations owed to its accountholders, by assessing the following types of improper fees to personal deposit accounts:

> (a) $12.00 fees for transfers of funds from secondary deposit accounts to primary deposit accounts as a result of non-recurring debit card or ATM transactions where such transactions are authorized into negative available primary account balances and where a linked secondary account lacks enough available funds to cover both the insufficiency in a primary account and the transfer fee;

> (b) $10.00 withdrawal limit fees as a result of transfers of funds made from secondary deposit accounts to primary deposit accounts pursuant to overdraft protection plans; and

> (c) $35.00 fees for overdrafts triggered by other bank-imposed service fees.

Even though the Deposit Agreement and Schedule of Fees has forbid Bank of America from assessing any of the foregoing fees at any time over the past five years, Bank of America systematically assessed all of them to Plaintiffs and its other account holders over that period of time.

4.      For people living paycheck to paycheck, like Plaintiffs and other members of the Classes defined below, the misconduct at issue in this case not only damaged them monetarily but also had a serious effect on their everyday lives.

5.      On behalf of themselves and the other members of the Classes, Plaintiffs bring this action to recover from Bank of America all of the improperly-assessed fees at issue in this case, and for other legal and equitable remedies.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because there are more than 100 class members, the aggregate amount in controversy for each claim alleged herein exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of each of the proposed classes is a citizen of a state different from Bank of America.

7.      Personal jurisdiction and venue are proper in Florida and within this District because Plaintiffs Key and De Cespedes are residents and citizens of Florida and this District and maintain personal deposit accounts with Bank of America at Bank of America financial institutions that are located in Florida and within this District; because Plaintiffs' claims alleged herein arose in substantial part in Florida and in this District; and because Bank of America does substantial business in Florida and throughout this District.

## PARTIES

8.      Plaintiff Key is a citizen and resident of Florida and resides in this District.  At all times mentioned herein, Plaintiff Key has maintained a personal checking account with Bank of America that was opened at a Bank of America branch in Florida and within this District.

9.      Plaintiff De Cespedes is a citizen and resident of Florida and resides in this District. At all times mentioned herein, Plaintiff De Cespedes has maintained a personal checking account with Bank of America that was opened at a Bank of America branch in Florida and within this District.

10.     Plaintiff Dillon is a citizen and resident of Georgia.  At all times mentioned herein, Plaintiff Dillon has maintained a personal checking account with Bank of America.

11.     Bank of America is incorporated in Delaware and maintains its headquarters and principal place of business in Charlotte, North Carolina. Bank of America provides, inter alia,

retail banking products and services to consumers, including personal checking accounts and debit cards. Bank of America operates banking centers throughout Florida and the United States.

## **BACKGROUND**

12.     Fee-based overdraft programs cost American consumers at least $23.7 billion each year in the aggregate — more than the loans extended in exchange for such fees, which amount to approximately $21.3 billion annually.[1]   Debit card transactions, the most common triggers of overdraft fees, cause an average overdraft of approximately $17.00 yet trigger an average fee of approximately $35.00.[2]   Most consumers do not learn of an overdraft for two or more days, exposing them to heightened risks of additional overdraft fees in the interim.[3]

13.     The overwhelming majority of overdraft fees are paid by chronic overdrafters, who are typically those least able to afford such fees or recover from them once incurred.  According to research by the Consumer Financial Protection Bureau, less than one-fifth of account holders — those who incur three or more overdraft fees, totaling over $100, each year — pay more than 90 percent of all overdraft fees triggered by debit cards, checks, and ACH electronic transactions.[4] These "heavy overdrafters" generally have household incomes below the U.S. average and pay nearly a full week's worth of those incomes on overdraft fees each year.[5]

---

[1]     Leslie Parrish, *Overdraft Explosion: Bank fees for overdrafts increase 35% in two years*, Center for Responsible Lending, Oct. 6, 2009, *available at* http://www.responsiblelending.org/overdraftloans/research-analysis/crl-overdraft-explosion.pdf.

[2]     Eric Halperin, Lisa James, and Peter Smith, *Debit Card Danger: Banks offer little warning and few choices as customers pay a high price for debit card overdrafts*, Center for Responsible Lending, at 25, Jan. 25, 2007, *available at* http://www.responsiblelending.org/overdraft-loans/research-analysis/Debit-Card-Danger-report.pdf.

[3]     The Pew Charitable Trusts, *Overdrawn: Persistent Confusion and Concern About Bank Overdraft Practices*, June 2014, at 9-10, *available at* http://www.pewtrusts.org/~/media/assets/2014/06/26/safe_checking_overdraft_survey_report.pdf.

[4]     Consumer Financial Protection Bureau, *Data Point: Checking Account Overdraft*, at 18, July 2014, *available at* http://files.consumerfinance. gov/f/201407_cfpb_report_data-point_overdrafts.pdf.

[5]     The Pew Charitable Trusts, *Heavy Overdrafters: A Financial Profile*, at 1, Apr. 2016, *available at* http://www.pewtrusts.org/~/media/assets/2016/04/heavyoverdrafters.pdf.

CLASS ACTION COMPLAINT

14.     Seniors, young adults, military families, and the unemployed are hit particularly hard.[6]  For instance, Americans aged 55 and older pay over $6.2 billion in overdraft fees annually[7] — $2.5 billion for debit card/ATM transactions alone.[8]  Those who depend the most on Social Security pay $1.4 billion in overdraft fees each year.[9]

15.     As the financial toll of fee-based overdraft programs has increasingly and disproportionately fallen on the shoulders of our most vulnerable citizens, big banks have steadily become more and more reliant on overdraft fees as a revenue source.  To illustrate, big banks in the United States with assets exceeding $1 billion reported $11.16 billion in overdraft fee revenue in 2015 – a sum that constituted nearly two-thirds of all consumer deposit account revenue for those banks that year.

16.     For Bank of America in particular, overdraft has evolved from an occasional courtesy into a product that it depends upon for revenue.  In 2016, for instance, Bank of America generated more than $1.7 billion in revenue attributable to $35.00 overdraft fees, paid largely by its poorest customers (as discussed above).  On average, each Bank of America checking account holder pays $497.18 on overdraft fees each year.[10]

---

[6]     *See* FDIC Study of Bank Overdraft Programs (Nov. 2008), at v.; Leslie Parrish, *Consumers Want Informed Choice on Overdraft Fees and Banking Options, CRL Research Brief*, Apr. 16, 2008, *available at* http://www.responsiblelending.org/overdraft-loans/research-analysis/final-caravan-survey-4-16-08.pdf; *see also* Comments of the Center for Responsible Lending to Board of Governors of the Federal Reserve System on Proposed Rule to Amend Regulation E—Overdraft Practices, Part II.B.1(b), pp. 10-12, Mar. 30, 2009, *available at* http://www.responsiblelending.org/overdraft-loans/policylegislation/regulators/comments-regulation-e_overdraft-practices.pdf.

[7]     Leslie Parrish and Peter Smith, *Shredded Security: Overdraft practices drain fees from older Americans*, Center for Responsible Lending, June 18, 2008, *available at* http://www.responsiblelending.org/overdraftloans/research-analysis/shredded-security.pdf.

[8]     *Id.*

[9]     *Id.* At 6, Table 1.

[10]    Byrne, John, *Bank Fees rise to all-time high – and nobody can stop them*, New York Post, Mar. 12, 2017, *available at* https://nypost.com/2017/03/12/bank-fees-rise-to-all-time-high-and-nobody-can-stop-them/.

---

17.     Faced with heightened regulatory scrutiny in recent years, Bank of America has implemented various new strategies to feed its insatiable appetite for overdraft fee and other fee-based revenue.[11] This case concerns several such strategies, executed by Bank of America in clear breach of its legal obligations to Plaintiffs and its other accountholders.

## FACTUAL ALLEGATIONS

### I.     BANK OF AMERICA ASSESSES $12.00 FEES FOR IMPROPERLY-TRIGGERED OVERDRAFT PROTECTION PLAN TRANSFERS

18.     Bank of America improperly assesses $12.00 overdraft protection transfer fees as a result of non-recurring debit card transactions and ATM transactions, even where there are insufficient available funds in both the primary deposit account and the linked secondary deposit account to cover both the amount of the transaction and the $12.00 transfer fee.  In assessing overdraft protection transfer fees in connection with such transactions, Bank of America breached the Deposit Agreement and the covenant of good faith and fair dealing, as well as unjustly enriched itself, causing substantial monetary damage to Plaintiffs and the members of the ODP Fee Class (defined below).

19.     The Deposit Agreement describes Bank of America's "standard overdraft setting" as follows:

> With our Standard Overdraft Setting, we do not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions.  This means that we decline everyday non-recurring debit card transactions and ATM transactions when we determine that at the time of the transaction you may <u>not have enough available funds in your account (or in any applicable Overdraft Protection plan) to cover the transaction</u>. . . .

Ex. A at 19 (emphasis added).

---

[11]     *See, e.g., Farrell v. Bank of America, N.A.*, Case No. 3:16-cv-00492-L-WVG (S.D. Cal.) ($66.6 million settlement for improper extended overdraft fees); *Bodnar v. Bank of America, N.A.*, Case No. 5:14-cv-3224-EGS (E.D. Pa.) ($27.5 million settlement for improper overdraft fees charged despite sufficient available funds); *Pantelyat v. Bank of America, N.A.,* Case No. 1:16-cv-8964-AJN (S.D.N.Y.) ($22 million settlement for improper overdraft fees charged on non-recurring Uber transactions).

CLASS ACTION COMPLAINT

20.     The "Overdraft Protection plan" offered by Bank of America of relevance to this

action is described in the Deposit Agreement as follows:

> **Overdraft Protection Plans**
> . . .
> <u>Under some plans we make transfers in a minimum amount so we
> might not make a transfer if you do not have at least the minimum
> transfer amount available under the plan.</u> . . .
>
> **<u>Overdraft Protection from Another Deposit Account</u>**  <u>This plan
> links your account to another Bank of America deposit account for
> overdraft protection. The other deposit account can be a second
> checking account or a savings account.</u>
>
> When you do not have enough available funds in your account to
> cover an Item, we may automatically transfer funds from the
> available balance in your other deposit account to your account. We
> generally charge an overdraft protection transfer fee for each
> transfer. . . .
>
> Please  see  the  *Schedule  of  Fees*  for  your  account  for  more
> information  about  overdraft  protection  from  another  deposit
> account.

*Id.* at 20 (emphasis added).

21.     With respect to the "Overdraft Protection from Another Deposit Account" plan

described above, the Schedule of Fees explains that the "minimum transfer amount available under

the plan," *see id.* – i.e., the minimum amount of available funds needed in a linked deposit account

in order for a transfer from such linked account to be made to the primary deposit account if there

are insufficient available funds in the primary account to cover a non-recurring debit card or ATM

transaction – is the amount necessary to cover both the insufficiency in available funds in the

primary account and the corresponding $12.00 overdraft protection transfer fee:

- <u>Overdraft Protection transfers are made for the amount required
  to cover the overdraft and the applicable transfer fee.</u> If your
  savings or secondary checking account does not have enough
  available funds to cover the necessary amount, we may decline
  to make the transfer.

- Bank of America Interest Checking and Advantage accounts
  plus  Platinum  Privileges  and  Preferred  Rewards  customers
  qualify for a waiver of this fee.

Ex. B at 12 (column of "Overdraft Protection Service" table titled "Other Important Information About This Fee") (emphasis added); *see also id.* (column of "Overdraft Protection Service" table titled "Fee Name/Description" providing that a "Overdraft Protection Transfer Fee" of $12.00 applies to each "transfer from a linked Bank of America savings or secondary checking account" made pursuant to the "Overdraft Protection from Another Deposit Account" plan).

22.     Thus, in the Deposit Agreement and incorporated Schedule of Fees, Bank of America promised its accountholders, in clear, straightforward terms, that it would only authorize a non-recurring debit card or ATM transaction into an insufficient available balance in a primary deposit account – and would only assess a corresponding $12.00 overdraft protection transfer fee – where there are "enough available funds . . . in any applicable Overdraft Protection plan[] to cover the transaction."  Accordingly, where a primary deposit account lacks sufficient available funds to cover a non-recurring debit card or ATM transaction, and where the linked deposit account lacks sufficient available funds to cover <u>both</u> the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, the transaction must be declined and Bank of America is not permitted to transfer funds or assess a $12.00 overdraft protection transfer fee.

23.     During the past five years, Bank of America has completely disregarded these straightforward obligations by systematically assessing its accountholders $12.00 overdraft protection transfer fees in connection with non-recurring debit card and ATM transactions for which there are insufficient available funds in a primary deposit account to cover and where a linked secondary account also lacks sufficient available funds to cover both the amount of the insufficiency in the primary account and the corresponding $12.00 transfer fee.

24.     For example, on April 6, 2016, Plaintiff De Cespedes made a non-recurring debit card purchase using his Bank of America debit card in the amount of $5.34. At the time of this transaction, Plaintiff De Cespedes was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with his savings account linked to his primary checking account. However, at the time of this April 6, 2016 transaction, there were insufficient available funds in Plaintiff De Cespedes's primary checking account to cover the transaction, and there were also

- 8 -

insufficient available funds in Plaintiff De Cespedes's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to the $12.00 overdraft protection transfer fee. Thus, because Plaintiff De Cespedes, "at the time of [his $5.34 non-recurring debit card] transaction[,] [did] not have enough available funds in [his primary] account (or in any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] everyday non-recurring debit card transaction," *id.*, "not make a transfer" from Plaintiff De Cespedes's linked savings account to his primary checking account, *id.* at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff De Cespedes in connection with such transaction, *see* Ex. B at 15.   Notwithstanding this plain contractual language, Bank of America authorized Plaintiff De Cespedes's $5.34 non-recurring debit card transaction on April 6, 2016 into a negative available balance in his primary checking account, transferred all of the remaining funds in Plaintiff De Cespedes's linked savings account (specifically, $2.69) to his primary checking account, and thereafter assessed Plaintiff De Cespedes a $12.00 overdraft protection transfer fee attributable to the $2.69 transfer of funds that Bank of America had made from his linked savings account to his primary checking account.   In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff De Cespedes), damaging Plaintiff De Cespedes monetarily.

25.     As another example, on April 25, 2016, Plaintiff De Cespedes made a non-recurring debit card purchase using his Bank of America debit card in the amount of $6.59. At the time of this transaction, Plaintiff De Cespedes was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with his savings account linked to his primary checking account. However, at the time of this April 25, 2016 transaction, there were insufficient available funds in Plaintiff De Cespedes's primary checking account to cover the transaction, and there were also insufficient available funds in Plaintiff De Cespedes's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to

the $12.00 overdraft protection transfer fee. Thus, because Plaintiff De Cespedes, "at the time of [his $6.59 non-recurring debit card] transaction[,] [did] not have enough available funds in [his primary] account (or in any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] everyday non-recurring debit card transaction," *id.*, "not make a transfer" from Plaintiff De Cespedes's linked savings account to his primary checking account, *id.* at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff De Cespedes in connection with such transaction, *see* Ex. B at 15.  Notwithstanding this plain contractual language, Bank of America authorized Plaintiff De Cespedes's $6.59 non-recurring debit card transaction on April 25, 2016 into a negative available balance in his primary checking account, transferred all of the remaining funds in Plaintiff De Cespedes's linked savings account (specifically, $8.39) to his primary checking account, and thereafter assessed Plaintiff De Cespedes a $12.00 overdraft protection transfer fee attributable to the $8.39 transfer of funds that Bank of America had made from his linked savings account to his primary checking account.  In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff De Cespedes), damaging Plaintiff De Cespedes monetarily.

26.     As yet another example, on May 31, 2016, Plaintiff Key performed an ATM transaction at a Bank of America ATM machine using her Bank of America debit card in the amount of $40.00. At the time of this transaction, Plaintiff Key was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with her savings account linked to her primary checking account. However, at the time of this May 31, 2016 transaction, there were insufficient available funds in Plaintiff Key's primary checking account to cover the transaction, and there were also insufficient available funds in Plaintiff Key's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to the $12.00 overdraft protection transfer fee. Thus, because Plaintiff Key, "at the time of [her $40.00 ATM] transaction[,] [did] not have enough available funds in [her primary] account (or in

any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] . . . ATM transaction," *id.*, "not make a transfer" from Plaintiff Key's linked savings account to her primary checking account, *id.* at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff Key in connection with such transactions, *see* Ex. B at 15. Notwithstanding this plain contractual language, Bank of America authorized Plaintiff Key's $40.00 ATM transaction on May 31, 2016 into a negative available balance in her primary checking account, transferred all of the remaining funds in Plaintiff Key's linked savings account (specifically, $6.25) to her primary checking account, and thereafter assessed Plaintiff Key a $12.00 overdraft protection transfer fee attributable to the $6.25 transfer of funds that Bank of America had made from her linked savings account to her primary checking account.  In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff Key), damaging Plaintiff Key monetarily.

27.     As a further example, on June 3, 2016, Plaintiff De Cespedes made a non-recurring debit card purchase using his Bank of America debit card in the amount of $20.75. At the time of this transaction, Plaintiff De Cespedes was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with his savings account linked to his primary checking account. However, at the time of this June 3, 2016 transaction, there were insufficient available funds in Plaintiff De Cespedes's primary checking account to cover the transaction, and there were also insufficient available funds in Plaintiff De Cespedes's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to the $12.00 overdraft protection transfer fee. Thus, because Plaintiff De Cespedes, "at the time of [his $20.75 non-recurring debit card] transaction[,] [did] not have enough available funds in [his primary] account (or in any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] everyday non-recurring debit card transaction," *id.*, "not make a transfer" from Plaintiff De Cespedes's linked savings account to his primary checking

CLASS ACTION COMPLAINT

account, *id.* at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff De Cespedes in connection with such transaction, *see* Ex. B at 15.  Notwithstanding this plain contractual language, Bank of America authorized Plaintiff De Cespedes's $20.75 non-recurring debit card transaction on June 3, 2016 into a negative available balance in his primary checking account, transferred all of the remaining funds in Plaintiff De Cespedes's linked savings account (specifically, $3.91) to his primary checking account, and thereafter assessed Plaintiff De Cespedes a $12.00 overdraft protection transfer fee attributable to the $3.91 transfer of funds that Bank of America had made from his linked savings account to his primary checking account.  In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff De Cespedes), damaging Plaintiff De Cespedes monetarily.

28.     As still yet another example, on August 3, 2016, Plaintiff De Cespedes made a non-recurring debit card purchase using his Bank of America debit card in the amount of $18.78. At the time of this transaction, Plaintiff De Cespedes was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with his savings account linked to his primary checking account. However, at the time of this August 3, 2016, transaction, there were insufficient available funds in Plaintiff De Cespedes's primary checking account to cover the transaction, and there were also insufficient available funds in Plaintiff De Cespedes's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to the $12.00 overdraft protection transfer fee. Thus, because Plaintiff De Cespedes, "at the time of [his $18.78 non-recurring debit card] transaction[,] [did] not have enough available funds in [his primary] account (or in any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] everyday non-recurring debit card transaction," *id.*, "not make a transfer" from Plaintiff De Cespedes's linked savings account to his primary checking account, *id.* at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff De Cespedes in connection with such transaction, *see* Ex. B at 15.  Notwithstanding

this plain contractual language, Bank of America authorized Plaintiff De Cespedes's $18.78 non-recurring debit card transaction on August 3, 2016 into a negative available balance in his primary checking account, transferred all of the remaining funds in Plaintiff De Cespedes's linked savings account (specifically, $2.89) to his primary checking account, and thereafter assessed Plaintiff De Cespedes a $12.00 overdraft protection transfer fee attributable to the $2.89 transfer of funds that Bank of America had made from his linked savings account to his primary checking account.  In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff De Cespedes), damaging Plaintiff De Cespedes monetarily.

29.   As another example, on August 12, 2016, Plaintiff De Cespedes made a non-recurring debit card purchase using his Bank of America debit card in the amount of $8.98. At the time of this transaction, Plaintiff De Cespedes was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with his savings account linked to his primary checking account. However, at the time of this transaction, there were insufficient available funds in Plaintiff De Cespedes's primary checking account to cover the transaction, and there were also insufficient available funds in Plaintiff De Cespedes's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to the $12.00 overdraft protection transfer fee. Thus, because Plaintiff De Cespedes, "at the time of [his $8.98 non-recurring debit card] transaction[,] [did] not have enough available funds in [his primary] account (or in any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] everyday non-recurring debit card transaction," id., "not make a transfer" from Plaintiff De Cespedes's linked savings account to his primary checking account, id. at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff De Cespedes in connection with such transaction, see Ex. B at 15.  Notwithstanding this plain contractual language, Bank of America authorized Plaintiff De Cespedes's $8.98 non-recurring debit card transaction on August 12, 2016 into a negative available balance in his primary checking

CLASS ACTION COMPLAINT

account, transferred all of the remaining funds in Plaintiff De Cespedes's linked savings account (specifically, $0.84) to his primary checking account, and thereafter assessed Plaintiff De Cespedes a $12.00 overdraft protection transfer fee attributable to the $0.84 transfer of funds that Bank of America had made from his linked savings account to his primary checking account.  In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff De Cespedes), damaging Plaintiff De Cespedes monetarily.

30.     As a final example, on January 25, 2018, Plaintiff Dillon performed one-time debit card transaction at a grocery store using her Bank of America debit card in the amount of $169.80. At the time of this transaction, Plaintiff Dillon was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with her savings account linked to her primary checking account. However, at the time of this January 25, 2018 transaction, there were insufficient available funds in Plaintiff Dillon's primary checking account to cover the transaction, and there were also insufficient available funds in Plaintiff Dillon's linked savings account to cover both the amount of the insufficiency in available funds in the primary checking account in addition to the $12.00 overdraft protection transfer fee. Thus, because Plaintiff Dillon, "at the time of [her $169.80 non-recurring debit card] transaction[,] [did] not have enough available funds in [her primary] account (or in any applicable Overdraft Protection plan)" to cover both the insufficiency in the primary account and the $12.00 overdraft protection transfer fee, Ex. A at 19, Bank of America was required to "decline [this] everyday non-recurring debit card transaction," *id.*, "not make a transfer" from Plaintiff Dillon's linked savings account to her primary checking account, *id.* at 20, and refrain from assessing a $12.00 overdraft protection transfer fee to Plaintiff Dillon in connection with such transaction, *see* Ex. B at 15.  Notwithstanding this plain contractual language, Bank of America authorized Plaintiff Dillon's $169.80 non-recurring debit card transaction on January 25, 2018 into a negative available balance in her primary checking account, transferred all of the remaining funds in Plaintiff Dillon's linked savings account (specifically, $3.42) to her primary checking account, and thereafter assessed Plaintiff Dillon a $12.00 overdraft protection

transfer fee attributable to the $3.42 transfer of funds that Bank of America had made from her linked savings account to her primary checking account.  In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees (as well as various other legal obligations owed to Plaintiff Dillon), damaging Plaintiff Dillon monetarily.

31.     By assessing $12.00 overdraft protection transfer fees as a result of non-recurring debit card and ATM transactions where insufficient available funds existed in any linked deposit account to cover both the insufficiency in the primary deposit account in addition to the then-applicable overdraft protection transfer fee, Bank of America breached the Deposit Agreement and Schedule of Fees, breached the covenant of good faith and fair dealing, engaged in substantively and procedurally unconscionable practices, unlawfully converted funds belonging to its accountholders, and unjustly enriched itself, damaging Plaintiffs Key, De Cespedes, and Dillon and the members of the ODP Fee Class (defined below) monetarily.

## II.  BANK OF AMERICA IMPROPERLY ASSESSES $10.00 WITHDRAWAL LIMIT FEES FOR INTRA-BANK OVERDRAFT PROTECTION TRANSFERS

32.     Unsatisfied with the millions of $12.00 overdraft protection transfer fees it improperly collected from its accountholders, in connection with fund transfers triggered by one-time debit card and ATM transactions that never should have been authorized in the first place, as described in the foregoing section, *see supra* Section I, Bank of America has also used its intra-bank funds transfer mechanism as a means of assessing $10.00 "Withdrawal Limit Fees" for transfers made from linked savings accounts to primary deposit accounts in connection with "Overdraft Protection from Another Deposit Account" plans.

33.     Specifically, the Schedule of Fees states that "you can make" a maximum of six transactions each month from a savings account to a checking account, and that, unless certain minimum balance requirements are satisfied, any additional withdrawals or transfers from a saving account to a checking account that "you . . . make" will incur a $10.00 "Withdrawal Limit Fee":

- Each monthly statement cycle, you can make a total of six withdrawals and transfers with no Withdrawal Limit Fee.

- If you maintain a minimum daily balance of $2,500 or more in your Regular Savings account, you may make additional withdrawals and transfers with no Withdrawal Limit Fee. Otherwise, the Withdrawal Limit Fee is $10.00 for each withdrawal and transfer during the monthly statement cycle above the six. We charge no more than six Withdrawal Limit Fees per monthly statement cycle. This fee applies to all types of withdrawals and transfers, including at ATMs, at financial centers, by telephone, by mail, through Online and Mobile Banking, and by any other electronic means.

Ex. B at 5.

34.     The Deposit Agreement states as follows with respect to the "Overdraft Protection from Another Deposit Account" plan: "If you use your savings account for this service, each transfer counts as one of the six limited transactions you are allowed each month from your savings account." Ex. A at 20.. However, neither the Deposit Agreement nor the Schedule of Fees states that a $10.00 Withdrawal Limit Fee will apply to any "automatic[] transfer [of] funds from the available balance in your other deposit account to your [primary] account" that "we make," i.e., Bank of America makes (*see* Ex. A at 20), pursuant to the "Overdraft Protection from Another Deposit Account" plan. *See id.* at 20 (discussing the plan) & Ex. B at 12 (discussing fees associated with plan). This is in contrast to other types of fee-triggering transactions identified in the Schedule of Fees that Bank of America specifically indicates are capable of triggering additional $10.00 Withdrawal Limit Fees. *See, e.g.,* Ex. B at 10 (discussing fees associated with using non-Bank of America ATMs, and disclosing that withdrawals, transfers, or balance inquiries made using a non-Bank of America ATM are subject to $2.50 and $5.00 fees charges "in addition to other account gees that may apply to the transaction, such as a Withdrawal Limit Fee for savings") (emphasis added).

35.     Thus, neither the Deposit Agreement nor the Schedule of Fees, nor any other contractual document entered into between Bank of America and any personal deposit accountholder, permits Bank of America to assess a $10.00 Withdrawal Limit Fee for a transfer of funds from a secondary savings account to a primary deposit account made by Bank of America in connection with an "Overdraft Protection from Another Deposit Account" plan (such as, for

example and without limitation, the transfers of funds made by Bank of America described in Section I above).

36.     Nonetheless, over the past five years, Bank of America has routinely breached the Deposit Agreement and Schedule of Fees by assessing $10.00 Withdrawal Limit Fees for intra-bank transfers of funds made by Bank of America in connection with its "Overdraft Protection from Another Deposit Account" plan.

37.     For example, on April 25, 2016, Plaintiff De Cespedes made a non-recurring debit card purchase using his Bank of America debit card in the amount of $6.59. At the time of this transaction, Plaintiff De Cespedes was enrolled in Bank of America's "Overdraft Protection from Another Deposit Account" plan, with his savings account linked to his primary checking account. Bank of America authorized Plaintiff De Cespedes's $6.59 non-recurring debit card transaction on April 25, 2016 into a negative available balance in his primary checking account, transferred all of the remaining funds from Plaintiff De Cespedes's linked savings account (specifically, $8.39) to his primary checking account, and thereafter assessed Plaintiff De Cespedes a $12.00 overdraft protection transfer fee attributable to the $8.39 transfer of funds that Bank of America had made from his linked savings account to his primary checking account.  Prior to the $6.59 debit card purchase that Plaintiff De Cespedes made on April 25, 2016, there had already been six occasions during the pertinent "monthly statement cycle" on which funds had been transferred out of Plaintiff De Cespedes's linked savings account. On April 27, 2016, Bank of America assessed a $10.00 "Withdrawal Limit Fee" to Plaintiff De Cespedes's linked savings account, attributable to the $8.39 that Bank of America had transferred from his linked savings account into his primary checking account on April 25, 2016 in connection with his "Overdraft Protection from Another Deposit Account" plan. In so doing, Bank of America breached the Deposit Agreement and the Schedule of Fees, damaging Plaintiff De Cespedes monetarily.

38.     Regardless whether Bank of America was permitted pursuant to the Deposit Agreement to make a particular transfer from an accountholder's linked deposit account to his or her primary deposit account in connection with an applicable "Overdraft Protection from Another

Deposit Account" plan, by assessing $10.00 Withdrawal Limit Fees to such transfers Bank of America breached the Deposit Agreement and the covenant of good faith and fair dealing, engaged in substantively and procedurally unconscionable practices, unlawfully converted funds belonging to its accountholders, and unjustly enriched itself, damaging Plaintiffs De Cespedes and the members of the Withdrawal Limit Fee Class (defined below) monetarily.

### III.   BANK OF AMERICA IMPROPERLY ASSESSES $35.00 FEES FOR OVERDRAFTS TRIGGERED BY OTHER BANK-IMPOSED FEES

39.     Finally, over the past five years, Bank of America has routinely assessed $35.00 fees for overdrafts triggered by other bank-imposed fees, even though the Deposit Agreement does not permit the assessment of such fees.

40.     The Schedule of Fees described the circumstances in which overdraft fees may be assessed (and the amount of each such fee) as follows: "When we determine that you do not have enough available funds in your account to cover an Item, . . . we either authorize and pay the Item and overdraw your account (an overdraft item), or we decline or return the item unpaid (an NSF: returned item)." (Ex. B at 13.)  Thus, the Schedule of Fees makes clear that $35.00 "Overdraft Item Fees" may only be triggered by "overdraft items," i.e., "Items" for which not enough funds are available to cover. (Ex B. at 13.)

41.     The Deposit Agreement defines "Item" as follows:

> **Item** includes all orders and instructions for the payment, transfer or withdrawal of funds from an account. As examples, item includes: a check, substitute check, purported substitute check, electronic transaction (including an ACH transaction, ATM withdrawal or transfer, or point of sale transaction), draft, demand draft, remotely created check, remotely created consumer check, image replacement document, indemnified copy, preauthorized draft, preauthorized payment, automatic transfer, telephone-initiated transfer, Online Banking transfer or bill payment instruction, withdrawal slip, in-person transfer or withdrawal, cash ticket, deposit adjustment, or other order of instruction for the payment, transfer, or withdrawal of funds, or an image, digital image or a photocopy of any of the foregoing. Item also includes any written document created or authorized in your name that would be a check or draft but for the fact that it has not been signed. Item may also include a cash-in ticket and a deposit adjustment. Item may also include a check, draft, warrant, or other item deposited to your account, including a deposited item that was returned unpaid.

(Ex. A at 4.)

42.     Notwithstanding the foregoing, Bank of America has routinely assessed $35.00 fees for overdrafts triggered by other bank-imposed "service fees" – which are not "Items" within the meaning of the Deposit Agreement.

43.     For example, on January 7, 2016, Plaintiff De Cespedes was assessed a $36.00 "fee" by Bank of America, as stated in the description for this charge which appears in a section of Plaintiff De Cespedes's account statement titled "Service Fees."   According to Bank of America, there were insufficient funds available in Plaintiff De Cespedes's account to cover the $36.00 fee assessed by Bank of America on January 7, 2016.  Later in the day on January 7, 2016, Bank of America assessed a $35.00 overdraft fee to Plaintiff De Cespedes's account in connection with the $36.00 "fee" that Bank of America had assessed to Plaintiff De Cespedes's account. Because the $36.00 "fee" (or "service fee") that Bank of America assessed to Plaintiff De Cespedes's account on January 7, 2016 did not constitute an "Item" subject to overdraft fees within the meaning of the Deposit Agreement, Bank of America breached the Deposit Agreement by assessing a $35.00 overdraft fee to Plaintiff De Cespedes's account on January 7, 2016 as a result of such "service fee."

44.     Because bank-imposed "service fees" do not constitute "Items" within the meaning of the Deposit Agreement, Bank of America was not permitted to assess $35.00 for overdrafts caused by such "service fees."   By doing so anyway, Bank of America breached the Deposit Agreement and the covenant of good faith and fair dealing, engaged in substantively and procedurally unconscionable practices, unlawfully converted funds belonging to its accountholders, and unjustly enriched itself, damaging Plaintiff De Cespedes and the members of the Fee-Triggered OD Fee Class (defined below) monetarily.

## CLASS ALLEGATIONS

45.     Plaintiffs bring this action on behalf of themselves and three classes of similarly-situated individuals pursuant to Federal Rule of Civil Procedure 23.

46.     First, Plaintiffs Key, De Cespedes, and Dillon bring this action on behalf of themselves and all other similarly-situated individuals who were improperly assessed overdraft protection transfer fees (the "ODP Fee Class"), defined as follows:

> All persons in the United States who, at any time between July 19, 2014 and the date of any order granting class certification, (1) held a personal deposit account with Bank of America that was assessed (and was not refunded by Bank of America) an overdraft protection transfer fee as a result of a non-recurring debit card or ATM transaction authorized into a negative available balance in the person's primary deposit account; and (2) whose available linked deposit account balance, prior to the assessment of such overdraft protection transfer fee, did not have enough available funds to cover both the insufficiency in available funds in the primary deposit account and the amount of the overdraft protection transfer fee.

47.     Second, Plaintiff De Cespedes brings this action on behalf of himself and all other similarly-situated individuals who were assessed a "Withdrawal Limit Fee" as a result of a transfer of funds made from a linked savings account to a primary deposit account pursuant to an "Overdraft Protection from Another Deposit Account" plan (the "Withdrawal Limit Fee Class"), defined as follows:

> All persons in the United States who, at any time between July 19, 2014 and the date of any order granting class certification, held a personal savings account with Bank of America that was assessed (and was not refunded by Bank of America) a "Withdrawal Limit Fee" triggered by a transfer of funds made from such savings account into a linked primary deposit account in connection with an "Overdraft Protection from Another Deposit Account" plan.

48.     Finally, Plaintiff De Cespedes brings this action on behalf of himself and all other similarly-situated individuals who were assessed fees as a result of overdrafts triggered by other bank-imposed service fees (the "Fee-Triggered OD Fee Class"), defined as follows:

> All persons in the United States who, at any time between July 19, 2014 and the date of any order granting class certification, held a personal deposit account with Bank of America that was assessed (and was not refunded by Bank of America) an overdraft fee or insufficient funds fee as a result of a debit of funds that was reflected in the "service fees" section of the person's monthly account statement prepared by Bank of America.

CLASS ACTION COMPLAINT

49.     The ODP Fee Class, Withdrawal Limit Fee Class, and Fee-Triggered OD Fee Class are referred to herein collectively at times as the "Classes."

50.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

51.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23 with respect to each of the Classes.

52.     Excluded from the Classes are Bank of America, its parents, subsidiaries, affiliates, officers and directors, any entity in which Bank of America has a controlling interest, all customers who make a timely election to be excluded, governmental entities, counsel for the parties, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

53.     The members of the Classes are so numerous that joinder is impractical.   On information and belief, each of the Classes consists of at least tens of thousands of members, the identities of whom are within the knowledge of Bank of America and can be ascertained only by resort to Bank of America's records.

54.     The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged improper fees by Bank of America from July 19, 2014 through the present as a result of the same or similar type of transactions.   Plaintiffs, like all Class members, have been damaged by Bank of America's misconduct in that they were assessed unlawful fees and charges in breach of the governing Deposit Agreement and Schedule of Fees.   Furthermore, the factual basis of Bank of America's misconduct is common to all members of each of the Classes and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of each of the Classes.

55.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes.   Among the questions of law and fact common to the Classes are:

a.      With respect to the ODP Fee Class, (i) whether Bank of America authorized into a negative account balance from July 19, 2014 through the present any "non-recurring" debit card or ATM transactions made by accountholders who were enrolled in overdraft protection transfer plans, pursuant to which the accountholder's primary checking account was linked to a secondary deposit account; (ii) whether Bank of America imposed any overdraft protection transfer fees from July 19, 2014 through the present in connection with such transactions where the available balance of the linked, secondary deposit account was insufficient to cover both the insufficient amount of available funds in the primary account and the transfer fee imposed pursuant to such overdraft protection transfer plan; and (iii) whether the assessment of overdraft protection transfer fees in connection with such transactions constituted breaches of the Deposit Agreement and Schedule of Fees, breaches of the covenant of good faith and fair dealing, unconscionable acts, and/or acts from which Bank of America was unjustly enriched.

b.      With respect to the Withdrawal Limit Fee Class, (i) whether Bank of America imposed "Withdrawal Limit Fees" from July 19, 2014 through the present in connection with transfers of funds from linked deposit accounts to primary deposit accounts, made in connection with an applicable "Overdraft Protection from Another Deposit Account" plan; and (ii) whether the assessment of Withdrawal Limit Fees in connection with such transfers constituted breaches of the Deposit Agreement and Schedule of Fees, breaches of the covenant of good faith and fair dealing, unconscionable acts, and/or acts from which Bank of America was unjustly enriched.

c.      With respect to the Fee-Triggered OD Fee Class, (i) whether Bank of America imposed any overdraft fees to personal deposit accounts between July 19, 2014 and the present as a result of electronic debits identified in the "service fees" section monthly account statements; and (ii) whether the assessment of overdraft fees in connection with such debits constituted breaches of the Deposit Agreement and Schedule

CLASS ACTION COMPLAINT

of Fees, breaches of the covenant of good faith and fair dealing, unconscionable acts, and/or acts from which Bank of America was unjustly enriched.

56.     Other questions of law and fact common to the Classes include:

a.     The proper method or methods by which to measure damages;

b.     Whether the Classes are entitled to interest that have accrued on any improperly assessed fees and/or withheld interest; and

c.     The declaratory relief to which the Classes are entitled.

57.     Plaintiffs' claims are typical of the claims of other members of each of the Classes in that they arise out of the same overdraft policies governed by Bank of America's Deposit Agreement, Schedule of Fees, and other related documents in effect from July 19, 2014 through the present, and arise out of the same conduct and practices of Bank of America in processing the same or similar type of transactions and imposing fees in connection therewith from July 19, 2014 through the present.  Plaintiffs have no interests antagonistic to the interests of any other member of any of the Classes.

58.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of consumer class actions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the enormity of the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, Class members would lose their rights by attrition.

60.     Even if Class members could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved in this action, individualized litigation would significantly delay and cause expense to all parties and the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a

CLASS ACTION COMPLAINT

class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
BREACH OF CONTRACT
(By All Plaintiffs Individually and On Behalf of the ODP Fee Class)

61.     Plaintiffs Key, De Cespedes, and Dillon repeat and incorporate herein all allegations from paragraphs 1-60 above.

62.     Plaintiffs Key, De Cespedes, and Dillon and all other members of the ODP Fee Class contracted with Bank of America for personal deposit account services, including overdraft fee protection services, as embodied in Bank of America's Deposit Agreement, Schedule of Fees, and related account documentation in effect from July 19, 2014 through the present.

63.     In plain, clear, and simple language, in the Deposit Agreement, Personal Schedule of Fees, and related account documentation in effect from July 19, 2014 through the present, Bank of America promised Plaintiffs Key, De Cespedes, and Dillon and all other members of the Class that it would not authorize, and would not charge an overdraft protection transfer fee for, any non-recurring debit card transactions or ATM transactions where there were insufficient available funds in the accountholder's primary deposit account balance – <u>unless</u> there were sufficient available funds in a linked secondary deposit account balance to cover both (1) the amount of the insufficient available funds in the primary deposit account, and (2) the applicable overdraft protection transfer fee. *See* Ex. A at 19-20; Ex. B at 12, 15.

64.     Bank of America breached the terms of the Deposit Agreement and related account documentation in effect from July 19, 2014 through the present by charging overdraft fees to the personal checking accounts of Plaintiffs Key, De Cespedes, and Dillon and the other members of the ODP Fee Class as a result of non-recurring debit card and ATM transactions where (1) there were insufficient available funds in a primary deposit account balance to cover the transaction, and (2) there were insufficient available funds in the linked secondary deposit account balance to

cover both the amount of the insufficient funds in the primary deposit account and the applicable overdraft protection transfer fee.

65.     Specifically, on April 6, 2016, April 25, 2016, June 3, 2016, August 3, 2016, and August 12, 2016, Bank of America breached the Deposit Agreement and Schedule of Fees by charging Plaintiff De Cespedes $12.00 overdraft protection transfer fees as a result of non-recurring debit card transactions for which insufficient available funds existed in his primary deposit account balance to cover, even though there were insufficient available funds available in Plaintiff De Cespedes's linked savings account to cover both the amounts of the insufficient funds in his primary deposit account balance and the applicable $12.00 overdraft protection transfer fees.

66.     Additionally, on May 31, 2016, Bank of America breached the Deposit Agreement and Schedule of Fees by charging Plaintiff Key a $12.00 overdraft protection transfer fee as a result of an ATM transaction for which insufficient available funds existed in her primary deposit account balance to cover, even though there were also insufficient available funds available in Plaintiff Key's linked savings account to cover both the amount of the insufficient funds in her primary deposit account balance and the applicable $12.00 overdraft protection transfer fee.

67.     Finally, on January 25, 2018, Bank of America breached the Deposit Agreement and Schedule of Fees by charging Plaintiff Dillon a $12.00 overdraft protection transfer fee as a result of a non-recurring debit card transaction for which there were insufficient available funds in her primary deposit account balance to cover, even though there were also insufficient available funds available in Plaintiff Dillon's linked savings account to cover both the amount of the insufficient funds in her primary deposit account balance and the applicable $12.00 overdraft protection transfer fee.

68.     At no time from July 19, 2014 through the present did any contractual provision exist authorizing Bank of America to charge overdraft protection transfer fees as a result of the non-recurring debit card transactions or ATM transactions initiated by Plaintiffs Key, De Cespedes, and Dillon and the members of the ODP Fee Class at issue in this case.

CLASS ACTION COMPLAINT

69.     Plaintiffs Key, De Cespedes, and Dillon and the members of the ODP Fee Class have performed all of the obligations imposed on them under the Deposit Agreement, Personal Schedule of Fees, and related documentation in effect from July 19, 2014 through the present.

70.     Plaintiffs Key, De Cespedes, and Dillon and the members of the ODP Fee Class sustained monetary damages from July 19, 2014 through the present as a result of Bank of America's breaches of the Deposit Agreement and related account documentation in effect between July 19, 2014 and the present.

**SECOND CLAIM FOR RELIEF**
BREACH OF CONTRACT
(By Plaintiff De Cespedes Individually and
On Behalf of the Withdrawal Limit Fee Class)

71.     Plaintiff De Cespedes repeats and incorporates herein all allegations from paragraphs 1-60 above.

72.     Plaintiff De Cespedes and all other members of the Withdrawal Limit Fee Class contracted with Bank of America for personal deposit account services, as embodied in Bank of America's Deposit Agreement, Schedule of Fees, and related account documentation in effect from July 19, 2014 through the present.

73.     In plain, clear, and simple language, in the Deposit Agreement, Schedule of Fees, and related account documentation in effect from July 19, 2014 through the present, Bank of America promised that $10.00 Withdrawal Limit Fees would only be assessed to certain types of transfers of funds made out of a personal savings account – types which did not include transfers made pursuant to an applicable "Overdraft Protection from Another Deposit Account" plan – in the event that six transfers of funds had already been made out of such account during that same monthly statement cycle. Thus, pursuant to the Deposit Agreement and Schedule of Fees, Bank of America was not permitted to assess $10.00 Withdrawal Limit Fees for transfers of funds from secondary deposit accounts to primary deposit accounts made in connection with "Overdraft Protection from Another Deposit Account" plans (such as, for example and without limitation, the transfers of funds made by Bank of America described in paragraphs 44-51 above).

CLASS ACTION COMPLAINT

74.     Nonetheless, Bank of America routinely breached the Deposit Agreement and Schedule of Fees by assessing $10.00 Withdrawal Limit Fees attributable to intra-bank funds transfers made by Bank of America in connection with its "Overdraft Protection from Another Deposit Account" plan.

75.     For example, on April 27, 2016, Bank of America breached the Deposit Agreement and Personal Schedule of Fees by charging Plaintiff De Cespedes a $10.00 Withdrawal Limit Fee attributable to a transfer of $8.39 made by Bank of America out of his personal savings account and into his personal checking account on April 25, 2016 in connection with his "Overdraft Protection from Another Deposit Account" plan.

76.     At no time from July 19, 2014 through the present did any contractual provision exist authorizing Bank of America to charge Withdrawal Limit Fees as a result of intra-bank transfers of funds originating from the personal savings accounts of Plaintiff De Cespedes or the members of the Withdrawal Limit Fee Class in connection with an "Overdraft Protection from Another Deposit Account" plan.

77.     Plaintiff De Cespedes and the members of the Withdrawal Limit Fee Class have performed all of the obligations imposed on them under the Deposit Agreement, Personal Schedule of Fees, and related documentation in effect from July 19, 2014 through the present.

78.     Plaintiff De Cespedes and the members of the Withdrawal Limit Fee Class sustained monetary damages from July 19, 2014 through the present as a result of Bank of America's breaches of the Deposit Agreement and related account documentation in effect between July 19, 2014 and the present.

**THIRD CLAIM FOR RELIEF**
BREACH OF CONTRACT
(By Plaintiff De Cespedes Individually and On Behalf
of the Fee-Triggered OD Fee Class)

79.     Plaintiff De Cespedes repeats and incorporates herein all allegations from paragraphs 1-60 above.

80.     Plaintiff De Cespedes and all members of the Fee-Triggered OD Fee Class contracted with Bank of America for personal deposit account services, as embodied in Bank of America's Deposit Agreement, Schedule of Fees, and related account documentation in effect from July 19, 2014 through the present.

81.     In plain, clear, and simple language, in the Deposit Agreement and related account documentation in effect from July 19, 2014 through the present, Bank of America promised Plaintiff De Cespedes and all other members of the Fee-Triggered OD Fee Class that it would only impose overdraft fees for overdrafts triggered by one of the "Items" identified in the Deposit Agreement and related account documentation then in effect.  *See* Ex. A, at 4.

82.     At no time between July 19, 2014 and the present have any "fees" imposed by Bank of America constituted "Items" that are subject to overdraft fees within the meaning of the Deposit Agreement and related account documentation then in effect.

83.     Bank of America breached the terms of the Deposit Agreement and related account documentation in effect from July 19, 2014 through the present by charging overdraft fees to the personal checking accounts of Plaintiff De Cespedes and the other members of the Fee-Triggered OD Fee Class as a result of overdrafts triggered by service fees imposed by Bank of America between July 19, 2014 and the present.

84.     Specifically, Bank of America breached its contractual promises to Plaintiff De Cespedes by imposing a $35.00 overdraft fee as a result of a $36.00 "fee" imposed by Bank of America on January 7, 2016, as reflected in the "Service Fees" section of Plaintiff De Cespedes's account statement dated January 7, 2016.  The $36.00 service fee imposed by Bank of America to Plaintiff De Cespedes's account on January 7, 2016 did not constitute an "Item" subject to overdraft fees within the meaning of the Deposit Agreement then in effect.

85.     At no time from July 19, 2014 through the present did any contractual provision exist authorizing Bank of America to charge fees for overdrafts triggered by other bank-imposed fees debited from the personal deposit account of Plaintiff De Cespedes or any other Fee-Triggered OD Fee Class member.

86.     Plaintiff Cespedes and members of the Fee-Triggered OD Fee Class have performed all of the obligations imposed on them under the Deposit Agreement and related documentation in effect from July 19, 2014 through the present.

87.     Plaintiff Cespedes and the members of the Fee-Triggered OD Fee Class sustained monetary damages from July 19, 2014 through the present as a result of Bank of America's breaches of the Deposit Agreement and related account documentation in effect between July 19, 2014 and the present.

### FOURTH CLAIM FOR RELIEF
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(By All Plaintiffs Individually and on Behalf of
Each of the Classes They Seek to Represent)

88.     Plaintiffs Key, De Cespedes, and Dillon repeat and incorporate herein all allegations from paragraphs 1-60 above.

89.     Under the laws of the states where Bank of America does business, good faith is an element of every contract pertaining to the assessment of overdraft fees and other service fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

90.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

91.     Since at least 2003, Bank of America has breached the covenant of good faith and fair dealing in the Deposit Agreement and Schedule of Fees through its overdraft policies and other fee-assessment practices as alleged herein.

92.     Plaintiffs Key, De Cespedes, and Dillon and the members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement and Schedule of Fees.

93.     Plaintiffs Key, De Cespedes, and Dillon and members of the Classes have sustained damages as a result of Bank of America's breach of the covenant of good faith and fair dealing.

**FIFTH CLAIM FOR RELIEF**
UNCONSCIONABILITY
(By All Plaintiffs Individually and on Behalf of
Each of the Classes They Seek to Represent)

94.     Plaintiffs Key, De Cespedes, and Dillon repeat and incorporate herein all allegations from paragraphs 1-60 above.

95.     Bank of America's overdraft fee and other fee-assessment policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.     The Bank does not disclose or reasonably disclose to customers the circumstances in which they will be assessed overdraft fees, including that they will be assessed overdraft fees as a result of other bank-imposed fees for which there are insufficient available funds to cover;

b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a non-recurring debit card transaction that will overdraw the account and result in an overdraft protection transfer fee where the balance of the linked secondary deposit account lacks the funds necessary to cover the insufficiency in the primary account and the applicable transfer fee;

c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that tranaction, before assessing an overdraft protection transfer fee;

- 30 -

d.      The Deposit Agreement and Schedule of Fees provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not unambiguously state that the Bank, in connection with an applicable overdraft protection plan, will authorize non-recurring purchases and ATM transactions made with Bank of America debit cards into negative available balances and assesses overdraft protection transfer fees to such transactions where sufficient available funds exist in a linked deposit account to cover the amount of such non-recurring debit card transaction or ATM transaction but not the overdraft protection transfer fee;

e.      The Deposit Agreement and Schedule of Fees provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not unambiguously state that a transfer of funds from a secondary linked deposit account to a primary deposit account, made in connection with an applicable overdraft protection plan, will be assessed a Withdrawal Limit Fees if six transfers or withdrawals have already been made out of the secondary linked deposit account in that monthly statement cycle;

f.      The Deposit Agreement and Schedule of Fees provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not unambiguously state that overdraft fees will be assessed for overdrafts triggered by other bank-imposed service fees;and

g.      The Deposit Agreement and related documents, including the Schedule of Fees, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety.

96.      Considering the great business acumen and experience of Bank of America in relation to Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the

allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

97.     Plaintiffs Key, De Cespedes, and Dillon and members of each of the Classes have sustained damages as a result of Bank of America's unconscionable policies and practices as alleged herein.

**SIXTH CLAIM FOR RELIEF**
CONVERSION
(By All Plaintiffs Individually and on Behalf of
Each of the Classes They Seek to Represent)

98.     Plaintiffs Key, De Cespedes, and Dillon repeat and incorporate herein all allegations from paragraphs 1-60 above.

99.     Bank of America had and continues to have a duty to maintain and preserve its customers' checking and savings accounts and to prevent their diminishment through its own wrongful acts.

100.     Bank of America has wrongfully collected overdraft fees, overdraft protection transfer fees, and withdrawal limit fees from Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

101.     Bank of America has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes, without legal justification.

102.     Bank of America continues to retain these funds unlawfully without the consent of Plaintiffs Key, De Cespedes, and Dillon or the members of the Classes.

103.     Bank of America intends to permanently deprive Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes of these funds.

104.     These funds are properly owned by Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes, not Bank of America, which now claims that it is entitled to

their ownership, contrary to the rights of Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes.

105.   Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes are entitled to the immediate possession of these funds.

106.   Bank of America has wrongfully converted these specific and readily identifiable funds.

107.   Bank of America's wrongful conduct is continuing.

108.   As a direct and proximate result of this wrongful conversion, Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes have suffered and continue to suffer damages.

109.   By reason of the foregoing, Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes are entitled to recover from Bank of America all damages and costs permitted by law, including all amounts that Bank of America has wrongfully converted.

**SEVENTH CLAIM FOR RELIEF**
UNJUST ENRICHMENT
(By All Plaintiffs Individually and on Behalf of
Each of the Classes They Seek to Represent)

110.   Plaintiffs Key, De Cespedes, and Dillon repeat and incorporate herein all allegations from paragraphs 1-60 above.

111.   Plaintiffs Key, De Cespedes, and Dillon, on behalf of themselves and the members of the Classes, assert a common law claim for unjust enrichment.

112.   By means of Bank of America's wrongful conduct alleged herein, Bank of America knowingly provides banking services to Plaintiffs and members of the Classes that are unfair, unconscionable, and oppressive.

113.   Bank of America knowingly received and retained wrongful benefits and funds from Plaintiffs Key, De Cespedes, and Dillon and members of the Classes. In so doing, Bank of America acted with conscious disregard for the rights of Plaintiffs Key, De Cespedes, and Dillon and members of the Classes.

CLASS ACTION COMPLAINT

114.     As a result of Bank of America's wrongful conduct as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs Key, De Cespedes, and Dillon and members of the Classes.

115.     Bank of America's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

116.     Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees, overdraft protection transfer fees, and withdrawal limit fees on Plaintiffs Key, De Cespedes, and Dillon and members of the Classes, in an unfair, unconscionable, and oppressive manner. Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

117.     The financial benefits derived by Bank of America rightfully belong to Plaintiffs Key, De Cespedes, and Dillon and members of the Classes. Bank of America should be compelled to disgorge in common funds for the benefit of Plaintiffs Key, De Cespedes, and Dillon and members of each of the Classes all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiffs Key, De Cespedes, and Dillon and the members of each of the Classes.

118.     Plaintiffs Key, De Cespedes, and Dillon and members of each of the Classes have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Imani Nia Key, Fernando De Cespedes, and Holly Dillon, individually and on behalf of the proposed Classes, demand a jury trial on all claims so triable and judgment as follows:

A.     Declaring Bank of America's fee assessment practices described above to be wrongful, unfair, and unconscionable, and in breach of the Deposit Agreement;

- 34 -

B.      Declaring Bank of America's fee assessment practices described above to be wrongful, unfair, and unconscionable, and in breach of the covenant of good faith and fair dealing;

C.      Awarding restitution of all improperly-collected fees attributable to the wrongful conduct alleged herein;

D.      Awarding actual damages in amounts according to proof;

E.      Disgorgement of the ill-gotten gains derived by Bank of America from its misconduct alleged herein;

F.      Awarding punitive and exemplary damages;

G.      Awarding pre-judgment interest at the maximum rates permitted by applicable law;

H.      Awarding costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

I.      Awarding such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Classes, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  July 19, 2019                          Respectfully submitted,

**HEDIN HALL LLP**

By: s/  Frank S. Hedin
       Frank S. Hedin

Frank S. Hedin (FBN 109698)
fhedin@hedinhall.com
1395 Brickell Ave, Suite 900
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

**AHDOOT & WOLFSON, PC**
Robert Ahdoot (*pro hac vice* forthcoming)
rahdoot@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiffs and the Putative Classes*

CLASS ACTION COMPLAINT